**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEANITA SAINTIL, | Case No. 22-CV-5448 |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| SHEEPSHEAD NURSING AND REHABILITATION CENTER, LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Jeanita Saintil, by her attorneys, Crumiller P.C. and Brooklyn Defender Services, as and for her complaint against Sheepshead Nursing and Rehabilitation Center, LLC ("Sheepshead"), respectfully alleges as follows, upon information and belief:

## PRELIMINARY STATEMENT

1. From 2015 to 2020, Jeanita Saintil, a Haitian immigrant, was one of Sheepshead's star nurses. She loved her job, and her patients loved her.

2. In March 2020, Saintil was overjoyed to learn she was pregnant with her first child. However, as the pregnancy progressed, she began to experience difficulties with parts of her job, such as lifting heavy patients in and out of beds and wheelchairs. Instead of providing her with reasonable accommodations, Sheepshead instructed her to simply go on unpaid leave early, without giving her any information about her rights. Sheepshead did not even tell Saintil – as it is legally required to do – that she was entitled to paid family leave.

3. A few days after giving birth, Saintil received a call from the hospital, telling her that her health insurance was no longer active. She came to learn that Sheepshead had simply terminated her employment when she went on leave, effectuating the termination of her health insurance.

1

4. Sheepshead's actions, especially firing Saintil for going on medical leave, shock the conscience. They also violated the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the New York State Human Rights Law, N.Y. Executive Law § 296(1) ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-107 *et seq.* ("NYCHRL").[1]

## PARTIES

5. Plaintiff is a woman who is domiciled in Kings County, New York. She worked for Defendant through a staffing agency from March 2015 until April 2018, when she was hired as an employee, and worked as an employee until her employment was unlawfully terminated on September 12, 2020.

6. Defendant Sheepshead is a limited liability company that operates a nursing home licensed by the State of New York under the name Sheepshead Nursing & Rehabilitation Center, located at 2840 Knapp Street, Brooklyn, New York, 11235, which is also its principal place of business. Sheepshead has more than 50 employees.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Saintil has asserted claims that arise under the federal laws of the United States.

---

[1] Sheepshead also shamelessly violated the New York Paid Family Act, 12 NYCRR § 380 *et seq.* ("NYPFL"), which requires private employees to participate in a state-administered Paid Family Leave program. In 2020, employees were entitled to payment of 60 percent of their average weekly wages, up to $840.70 a week, for up to ten weeks. Employers must participate in the program, or face both civil and criminal penalties; moreover, they are obligated to affirmatively notify employees, in writing, of their rights to PFL. NY Work. Comp. L. § 229 (2016). Sheepshead not only failed and refused to notify Saintil of the program, but also violated its obligation to pay her during her leave, which payments would have totaled over four thousand dollars. However, because the New York State Workers' Compensation Board has sole authority to adjudicate NYPFL claims, 12 NYCRR § 380.1, Saintil intends to pursue them separately from this action.

8. This Court has supplemental jurisdiction over Saintil's concurrent NYSHRL and NYCHRL claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in the Eastern District of New York pursuant to 29 U.S.C. § 1391(b)(2) because Plaintiff resides in this District and a substantial part of the events or omissions on which the claims asserted herein occurred in this District.

## FACTUAL ALLEGATIONS

10. In 2007, at age 23, Saintil and her sister immigrated to the United States, joining their father, who had come when they were teenagers.

11. Saintil worked at Wendy's for about five years until, in 2012, she was accepted to the Daisley Institute in Brooklyn, a vocational training school with a focus on medical care, for its Certified Nursing Aide ("CNA") program. CNAs perform non-medical services in long-term care or assisted-living facilities. She attended the months-long program during the day while continuing to work at Wendy's in the evenings. She successfully passed her exams and graduated the program that year.

12. In 2013, Saintil began working as a CNA through a staffing agency, Towne Nursing. In March 2015, she was placed with Sheepshead, a nursing and rehabilitation facility with over 150 patients located in Sheepshead Bay, Brooklyn. Sheepshead provides medical care to patients with complex medical conditions following a hospital stay, short-term rehabilitation, long-term care to its full-time residents, adult daycare, and outpatient rehabilitation.

13. Her job duties included checking on patients and assisting them in all manner of daily activities: she fed them, helped them bathe, repositioned them in bed, and helped them in and out of wheelchairs. She also monitored their vital signs and their overall wellbeing. Saintil typically

cared for about eight patients at a time, and more when Sheepshead was short-staffed. She enjoyed her work, and formed strong relationships with the patients.

14. In 2018, Saintil asked Sheepshead if she could join their staff full-time, and Sheepshead agreed. Her hard work had paid off: for the first time, she had a full-time job with full benefits. As an employee, she became a member of 1199 SEIU United Healthcare Workers East, and received full health insurance coverage through Greater New York Benefit Fund, an 1199 SEIU fund. She made $19.36 per hour and worked 35 hour a week, the approximate equivalent of a $32,000 annual salary. It was a vast improvement over her many years at the fast-food counter.

15. Saintil loved her job. She loved helping people; it was why she went into nursing.

16. In February 2020, Saintil was excited to discover that she was pregnant with her first child. In May, she disclosed the pregnancy to Sheepshead. Management congratulated her on her pregnancy, but did nothing further in terms of initiating any conversations with her about her rights to take time off to recover from her pregnancy and/or bond with her child.

*Sheepshead Failed to Reasonably Accommodate Saintil*

17. By August 2020, at six months pregnant, Saintil was experiencing physical discomfort that made her regular workload and schedule difficult.

18. She experienced pain in her lower abdomen that was exacerbated whenever she tried to lift a heavy patient. This pain was alarming to her, as she had never experienced anything like it before, and she was naturally concerned about the pregnancy.[2] Some of her coworkers began helping her with lifting heavier patients to and from their beds and/or wheelchairs.

---

[2] Saintil was right to be concerned: American Medical Association guidelines state that to avoid adverse pregnancy events, workers should avoid repetitively lifting more than 51 pounds after 24 weeks of pregnancy.

4

19. She also began to experience intense fatigue, especially spending so much time on her feet. She began taking brief breaks from standing, periodically throughout the day. With these breaks, she had no issues performing the majority of her duties such as feeding patients, bathing patients, checking their vital signs, and providing patient accompaniment.

20. In late August 2020, Saintil spoke to a manager named Maria about her difficulties with the lifting of heavier patients. Maria responded simply by asking Saintil, "so you don't think you can do [your job] anymore?" Saintil was confused by the question, and replied that she was not sure. Maria did not initiate any discussion about a temporary shifting or modification of duties. Instead, she instructed Saintil to provide a letter from her doctor, and to fill out a short-term disability form, in order to go on leave early.

21. Saintil had planned to take four months of unpaid leave, with some difficulty and relying on her savings. The thought of going without income for six months was stressful; her husband's income as an Uber driver was not sufficient to make ends meet, and she had only a few thousand dollars in savings. However, fearing for her health and the pregnancy, she accepted the only option Sheepshead had presented her with: going on leave.

22. When Saintil had difficulties obtaining a letter from her doctor, Maria agreed that a self-written letter would be sufficient. Accordingly, on September 8, 2020, as instructed, Saintil submitted a letter requesting to start her maternity leave approximately eight weeks earlier than planned. In her letter, she explained that she had planned to work until her child was born, but was in such severe discomfort that she saw no alternative.

23. Saintil's request was approved, and her last day of work was September 11, 2020. Maria arranged for Saintil to receive payment for her remaining paid time off days and instructed her to

5

notify Sheepshead when she was able to return to work after her delivery. Saintil did not receive any further information regarding FMLA, her benefits, or NYPFL.

***Sheepshead Terminated Saintil's Employment and Benefits as Soon as She Began Her Leave***

24. On October 23, 2020, Saintil began to experience intense pain and heavy bleeding. Though her due date was more than two weeks away, she raced to the hospital, where she gave birth to her son via emergency C-section that day. Fortunately, the baby was healthy, and her prognosis was positive. It appeared she would be able to return to work in February 2021 as she had originally planned.

25. After spending three nights in the hospital, Saintil returned home to continue her recovery. A few days later, she received a call from someone in the hospital's billing department who informed her that her insurance had been declined because her insurance was no longer active. Saintil was stunned, but assumed there must be some sort of error. The hospital informed Saintil that she owed $28,000 in medical bills.

26. In early November 2020, Saintil called Sheepshead's Human Resources Department to find out why the hospital was claiming her health insurance was inactive. The person she spoke with could not confirm or deny whether her health insurance had been terminated. Saintil was told that Sheepshead had not taken any adverse action regarding the insurance, and rather that the union was responsible. The representative suggested that perhaps Saintil's insurance coverage had lapsed because she had failed to pay her union dues.

27. That turned out to be abjectly false. When she inquired, 1199's benefits administrator, the Greater New York Benefit Fund, informed Saintil that Sheepshead had terminated her employment and benefits when she began her leave in September 2020.[3]

28. As a mother of a newborn less than one month old, Saintil thereby came to realize not only that she had lost her job and her health insurance, but she owed $28,000 that she had no means to pay.

*The Loss of Her Job Caused Saintil Severe Emotional Distress*

29. Losing her job and her health insurance was devastating to Saintil.

30. She became extremely depressed. She struggled to eat and had a low supply of breastmilk as a result. The exhaustion of having a newborn was severely compounded by the insomnia she regularly suffered, worrying about her financial situation and the betrayal she felt over how the company had treated her.

31. She experienced pain in her chest that she attributed to anxiety stemming from the loss of her job and the debt. As a new parent, Saintil was very anxious that she would be unable to provide for her newborn son.

32. Saintil's marriage suffered. Her husband, who was physically abusive, blamed her for their situation, and the relationship was a source of constant stress for her. She felt forced to rely on him financially. She felt trapped and helpless.

33. Saintil exhausted her savings. In January 2021, she began receiving Medicaid and SNAP (food stamps). She and her baby remained uninsured for the first few critical months of her baby's life, and during her postpartum recovery period, until her Medicaid coverage began.

---

[3] Upon information and belief, on or about November 2, 2020, 1199 sent Saintil a COBRA Notice informing her that her coverage had ended on September 30. She did not receive this letter, but even if she had, it obviously would have been too late to remedy the issue.

7

34. She felt humiliated and worthless, and as though all of her hard work had been for nothing. She relied on the generosity of her father for groceries and toiletries, and she went into credit card debt. She felt an extraordinary sense of helplessness and uncertainty as to how she would care for her child.

35. She was then informed that the hospital's charity program would cover the majority of the expenses caused by her lapse in health insurance coverage. She was extraordinarily grateful, though she could never get back the months of anguished anxiety she had suffered over the debt.

36. Saintil remained confused about how she could have lost her job while she was on authorized medical leave. She felt betrayed and degraded by Sheepshead's treatment of her, having worked so hard for them and given so much of herself for so many years.

37. After her maternity leave, Saintil approached Sheepshead about rehiring her, but Sheepshead refused.[4]

**FIRST CAUSE OF ACTION:**
**Interference in Violation of FMLA**

38. Saintil repeats and realleges each allegation set forth above.

39. Sheepshead improperly interfered with Saintil's right to FMLA leave by, *inter alia*, restraining and/or denying her attempts to exercise health insurance benefits to which she was entitled, and/or failing to provide and notify Saintil of her eligibility status, rights and responsibilities under FMLA.

---

[4] In January 2021, Saintil's then-husband became physically violent with her, as he had before. When she fought back, he called the police, and persuaded them to arrest Saintil. Shortly thereafter, Sheepshead contacted her, notifying her that it had received notification of the arrest, and that she was no longer eligible for re-hire. The charges were ultimately dismissed and sealed.

40. Sheepshead acted willfully, with malice and/or reckless indifference to Saintil's rights under FMLA, entitling her to an additional award of liquated damages in an amount equal to 100 percent of her economic damages.

41. Sheepshead's unlawful acts caused Saintil to suffer economic damages, including lost wages and benefits, as well as emotional and physical distress.

42. Sheepshead is liable to Saintil for economic damages, emotional distress damages, compensatory damages, liquidated damages, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION:
### Discrimination in Violation of the NYSHRL

43. Saintil repeats and realleges each allegation set forth above.

44. Sheepshead unlawfully discriminated against Saintil in the terms and conditions of her employment by, *inter alia*, subjecting her to disparate working conditions on the basis of her sex, pregnancy and disability in violation of the NYSHRL.

45. Sheepshead's unlawful discrimination caused Saintil to suffer emotional distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, and economic damages.

46. Sheepshead acted willfully with malice and/or reckless indifference to Saintil's rights, entitling her to an award of punitive damages.

47. Sheepshead is liable to Saintil for economic damages, emotional distress damages, compensatory damages, liquidated damages, attorneys' fees, and costs.

## THIRD CAUSE OF ACTION:
### Discrimination in Violation of the NYCHRL

48. Saintil repeats and realleges each allegation set forth above.

49. Sheepshead unlawfully discriminated against Saintil in the terms and conditions of her employment on the basis of her pregnancy and pregnancy-related disabilities, in violation of the NYCHRL.

50. Sheepshead failed to enter into any interactive process, individualized assessment or cooperative dialogue with Saintil regarding how best to accommodate her pregnancy-related disabilities.

51. Sheepshead's unlawful discrimination caused Saintil to suffer emotional suffering and distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, and economic damages.

52. Sheepshead acted willfully, with malice and/or reckless indifference to Saintil's rights, entitling her to an award of punitive damages.

53. Sheepshead is liable to Saintil for economic damages, emotional distress damages, compensatory damages, liquidated damages, attorneys' fees, and costs.

## DEMAND FOR RELIEF

WHEREFORE, Saintil respectfully requests that this Court enter judgment in her favor as against Sheepshead in an amount to be determined by the finders of fact:

a) on the First Cause of Action, awarding economic damages, emotional distress damages, compensatory damages, liquidated damages, attorney's fees, and costs;

b) on the Second and Third Causes of Action, awarding economic damages, compensatory damages, punitive damages, attorney's fees, interest, and costs;

f) granting such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to FRCP § 38(b), Plaintiff demands a trial by jury.

Dated: Brooklyn, New York
      September 12, 2022

                                        Respectfully submitted,

*Julia Elmaleh-Sachs*
Julia Elmaleh-Sachs
Susan K. Crumiller
Crumiller P.C.
16 Court St, Ste 2500
Brooklyn, NY 11241
(212) 390-8480
julia@crumiller.com
susan@crumiller.com

Eric Eingold
Brooklyn Defender Services
Employment Law Practice
177 Livingston St, 7th Floor
Brooklyn NY 11201
(646) 856-8431
eeingold@bds.org

Attorneys for Plaintiff